Case number 09-1847, Royal Indemnity Company v. Chicago Hospital Risk Pooling. Good morning, Your Honor. Gerald Saltarelli, representing Appellant Chicago Hospital Risk Pooling Program, who we refer to by the acronym CHIRP. Appropriate one in this context. Good morning, Your Honors. My name is Kimberly Carney, and I represent Appellee Royal Indemnity Company. Good morning, Your Honors. I'm Gary Grasso, GRASSO, and I represent the Home Insurance. Thank you. Mr. Saltarelli. May I proceed, Judge? You may. Maybe I can move this. It's not a microphone. It's just a recording device. It's not an amplifier. It was sort of in my face there. Your Honor. Make yourself convenient, I think, if you want to move it to a side. I get a better view of this question. There's no dispute among the parties in this case that the insurers who are proceeding by way of equitable subrogation stand in the shoes of Palos Community Hospital. They're direct insured under their policies. Where the disagreement is, is whether the claims those insurers have inserted are within the scope of the arbitration clause, which is in Section 6.21. And whether and who should be deciding the scope of the arbitration. Yes, Your Honor. That, too. The trial court at each of the insurers for different reasons argues in this court that the dispute is not within the scope of the arbitration clause. The trial court, it appears to me on reading the decision and hearing the decision, implied a temporal limitation to the clause. In other words, that it only applied to disputes about whether a case should be settled while that settlement is pending prior to the actual consummation of the settlement. Given our standard of review in this case, does it really matter what they argue below? No, it doesn't. We're making a de novo review of this anyway, and we're going to be the ones that have to look at this clause and decide what the scope is, assuming we think that's an appropriate judicial act. Correct. De novo review. It really doesn't matter what the argument is, but I think the argument fleshes out why the three reasons that they have asserted are wrong. I don't see a temporal limitation in the language. And one can easily conceive of circumstances where disputes about a settlement happen after the settlement is consummated. For example, where the hospital is not, in fact, consulted, as it should be. Perhaps the hospital, after the settlement, might allege that crucial facts, material information, were not disclosed to the hospital. However, there are different elements that have to be confronted when you're dealing with a determination, a weighing of reasonableness and feasibility, looking ahead towards the settlement, and considerations that enter into the equation, looking behind to a historical settlement that already took place. May I ask, I'd like to hear your focus on the entirety of that 6.21, because to me it says that when you look at the settlement. Next point. And the trustees conclude that said inability is to the detriment of the participating hospitals. Said dispute shall be subject to arbitration by an ad hoc committee, et cetera. Doesn't that appear to be written for a circumstance where you're two parties at loggerheads about whether to settle or not? And the decision of whether to settle or not at that stage means that the lawsuit will either continue to go on, or it will be terminated at that point. And that the parties, that is the trustees who are given the unilateral right under this clause, say, if we don't settle, you are going to be harming the other participating hospitals. Therefore, we, the trustees, the only ones empowered to do so, are going to trigger the right to have this, I'll put it in visual quotes, impartial arbitration in front of our own trustees, to basically decide whether the case is going to be settled. It's hard for me to understand how the inability to settle is going to be to the detriment of the participating hospitals after the case has not been settled and the trustees have decided not to invoke the right they had unilaterally to bring this to their trustees for a decision. Because in this situation, you argue repeatedly that the insurance companies are in the shoes of Palos. And apparently in the record here, there were disputes or there were representations made at least by Royal, maybe by both of the companies, we should settle this case because the exposure is much greater than $5 million. And there is a possibility to settle it for less. And apparently, at that point in time, although the people you say were in the shoes of Palos were saying, we have a disagreement with you about whether to settle, your trustees decided we're not going to invoke this because this type of a dispute, apparently in their mind, did not create a detriment to the participating hospitals. Two answers to that. The short answer to the very last point you made is the hospital... Let me throw a third element into that. I think it passes under the same analytical scope. And that is the argument that it makes a lot less sense on the surface of things to have the trustees be the arbitrators or the mediators, well, the arbitrators, be the arbitrators once the settlement takes place and the issue is no longer the feasibility of any settlement, but rather the recoupability of layers by the various insurers who have a vested stake in those layers where they can view the trustees as the fox in charge of their henhouse. And while the argument is made they may have to take the agreement as it's written once it goes through an unconscionability analysis, it still doesn't make a lot of sense dealing with a relatively rational universe who are involved in drafting the various provisions here. And we will now give you a chance to speak. First of all, the trust agreement requires that both the trustees and the affected hospital agree in the settlement. The reason there was no arbitration in this case, and it is not in the record because we are on motion practice here, the hospital did not object to the settlement and did not make the demands the carriers are now making. But what about Royal? Sorry? Didn't Royal say this should be settled? They sent demand letters. They have the right to associate in the defense, and their counsel sent demand letters at a certain point in time demanding that we settle within our limits. But doesn't that, in concert with your position that they are in the shoes of Palos, and you knew what their relationship was at that point, doesn't that, under your reading, trigger the obligation of the trustees to say, okay, somebody in the shoes of Palos is saying we should settle and we don't want to. And so don't we have to trigger that at that point? And if that is triggered, then there should be an arbitration. That's the point. They are confined by the agreement between their subrogore, Palos, and Chirp. And if their claim is you should have gone the other way on this settlement, you should have done this settlement sooner, we're asserting this right, that right then has to be asserted in arbitration. The 621 requires the agreement of the trustees and the hospitals. And if there is not agreement, then the hospital has the right to trigger an arbitration, and the trust has a say in that too. And to answer one of your other questions, there can be circumstances where the failure to settle, in fact, endangers the trust assets. Just like any other lawsuit, if you pass up a settlement, and that's what they're alleging, the exposure there could damage the collective entity. And these hospitals pooled their assets for purposes of self-insurance. They gave up the individual right to dictate the terms of settlement. The arbitration clause is to the benefit of the hospitals to give them a say if they think their interests are being squelched by the trustees' majority. Then why would you say, and the trustees conclude, that the inability to concur in a settlement is to the detriment of the participating hospitals, and not saying that the participating hospital or the hospital in question has that same right? I think there's a threshold there, and it's saying the trustees have to make a determination. This is a serious issue that has serious impact to the assets of the trust and ought to be arbitrated. Now, the hospital, the carrier standing in the shoes of the hospital, might allege that the trustees refused to make that determination. They refused to do it in breach of their duty, and there should have been an arbitration. That's a place they might assert. Mr. Salter, doesn't this give the trustees the chance to hear but ignore the insurance companies saying, hey, wait a minute, you have to settle here. They then don't exercise their trigger right to have the arbitration. The case goes forward. The damage is done for the other insurance companies. And then after the fact, you say, okay, well, now you're in the shoes of Palos, and so you're stuck coming to us, and you don't have any other rights. No, two different theories. They argued a direct duty. The CHRP has a direct duty to them. Judge McDonald has rejected that in a ruling on December 16, 2008. This appeal only concerns their complaints where they allege equitable subrogation, or as a matter of law, they step into the shoes. They can have that arbitration. And the procedural mechanism in this clause is it is before an ad hoc group of trustees who have a fiduciary duty to hear this case. And I think where this argument is veering into is the unconscionability. But the other one is the reading you're giving to this clause itself, which has nothing to do with the unconscionability, although it's looming out there. Well, the procedure we're talking about, the steps you're talking about, it's a procedure that's set up to cover disputes regarding whether to settle or not. Am I correct? Yes. And I'm looking at the first sentence of 6.21. It says, The trustees shall devise a policy to govern the settlement of claims against the hospital for covered losses. Now, this could be read to say that covered losses is when someone is sworn to hospital for medical malpractice. I think covered hospital is defined in the agreement. But are we talking about a covered loss here where we're claiming that CHRP negligently or had some malfeasance here in failing to settle? The underlying claim was a covered loss. No one disputes that. I'm talking about the claim that's before the trial court. I know it took place with the The claim now being asserted, the carriers would like to characterize as something other than the settlement of covered loss. But what it in reality is It's a settlement of a covered loss. The cause of action is not about a covered loss. It's about a negligence claim against CHRP. CHRP. But they have to assert it standing in the shoes of the hospital. And what their allegations say is the hospital is unhappy with the way CHRP settled or failed to settle. Does this agreement Is there anything in the agreement Therefore it's within the scope of the clause. I'm sorry. Is there anything in the agreement which says that the hospital has no cause of action against CHRP no matter what it does and is limited only through arbitration? I don't believe phrased that way. There is a clause in the trust agreement that says this creates no rights and no causes of action for third parties. But there's a common law cause of action. And it provides the mechanisms by which disputes over the settlement or non-settlement of claims are adjudicated through arbitration. I do not believe to answer your question there is a specific provision that says a hospital cannot sue CHRP for this, that, and the other thing. I don't believe there is such a provision. Speaking, standing up here. There is a built-in bias that results from this arrangement with regard to the primary retention. Because that's what the church is concerned about. And presumably the trustees would reflect that ordinarily if this were a tripartite kind of arbitration. One side would pick from church. The other side would pick from the excess carrier. And the two would pick a neutral. But this is not the kind of situation where one side wins and one side loses. The hospitals have fooled their assets. This claim is resolved through trial or settlement. It's going to affect all the hospitals and the affected defendant hospitals. Only with respect to the primary retention, except, of course, there is a backdoor, obviously. Layers of excess aren't paid without rates being affected on the comeback, depending on the arrangement. And the level of settlement affects how the individual hospital's account is charged. There are different levels. There's an account A and a B account. And how the hospital fares, how much money it pays, Payless pays, depends on the level of settlement. And how much the other hospitals pay depends on the level of the settlement. So they're interdependent. It is not unfair for the hospitals as a group to say, we're going to prioritize preservation of the collective assets over the interests of an individual hospital, but allow that individual hospital the right to go through a different group of trustees, not the committee that makes the decision, an ad hoc group, and make a decision, is this settlement in the best interest of this total entity? I don't think that's unfair and that's not unconscionable. There certainly was no procedural unconscionability. Any hospital's entry into this program, which involves millions of dollars of potential medical liabilities, is obviously carefully thought out when they subscribe on to an 80-page trust agreement. And there was no evidence introduced in the court below that in any way that any hospital or Payless was hoodwinked or deceived. However, the entire necessity in structuring the arbitration as it is, is geared towards getting the settlement, not in chasing it after it's happened, which is perfectly accessible through ordinary legal means through the courts. I disagree. I think the context obviously is disputes before the settlement is effectuated, because that's when the most likely will arise. But there are no words of limitation in here that say that the hospital can simply sit on its rights, not raise the issue, and then file a lawsuit against CHRP and therefore evade the arbitration. So let me go back to the words of the section itself. The inability implied to settle, to concur in a settlement, which is the only reasonable reading of that, is to the detriment of the participating hospitals. How was the inability to settle Royal and Holmes' dispute with you arguably within that? How did that create a detriment to the participating hospitals? Because if your action, CHRP's action, was wrong at the time, you got what you were looking for. You got to do the case the way you wanted to do the case. The committee of trustees that handled that case, it may be they made a wrong decision. Maybe they should have tried the case and they would have won the case. There's still a dispute about whether that settlement was appropriate or not. They happen to be asserting it, but they're standing in Palos's shoes. And I think the law is clear, Equistar Chemicals, that the suburb G stands in the shoes, takes subject to all the limitations of the suburb order. But if the premise is that the inability to settle creates a problem for the other hospitals, how is that premise satisfied here? It's not an inability to settle. The triggering words is inability to concur in a settlement. And now Palos is saying, speaking with the insurers controlling it, is saying, we don't concur in the settlement. You did a bad deal. You should have settled sooner. We wouldn't have gotten hit, and our excess carriers wouldn't have gotten hit, or our excess policies wouldn't have been tapped. It's still a disagreement over a settlement, even though it occurs after the settlement. What if Ms. Chirp ignored the hospital, didn't consult with them? But there's a disagreement about the settlement that creates a detriment to the participating hospitals. Well, I think either effectuating a settlement or not effectuating a settlement can create a detriment to the rest of the hospitals. It always depends on the ultimate judgment. How would the case have fared if you hadn't settled and tried? If Chirp got what it originally wanted, the ability to say, this is the way this piece of litigation is going to be handled, how was it affected detrimentally by the dispute that was originally raised by Royal in saying, settle this case? It was not, because it was ignored. I think this language, fairly read and with respect, posits that the two parties, the hospital and the Chirp trustees charged with the settlement, have a disagreement about the wisdom of the settlement. And all it is saying is, if you have that disagreement, it ought to be arbitrated rather than be in the courts. And I cannot come up with a different way of formulating it than that, Your Honor. And if they are suing, in the shoes of Palos, they take subject to the laws of subrogation. And the question really is, if Palos were now, nor the carriers, were now to sue Chirp and say, you know, when you settled this case for your full limits of $5 million, and that cost us X million dollars in our account, we were damaged to that X million dollars because you settled. You should have tried the case. I submit this arbitration clause would govern. If the court agrees with that proposition, then it follows a fortiori that the carriers standing in their shoes have to arbitrate. If you disagree with that proposition, then there's no arbitration. If there is still viability for direct actions rather than for derivative actions, then there's another. I'm sorry, for what? I couldn't hear you. If there is still, if your position would still urge the availability of direct actions rather than equitable subrogation by the excess carriers, then there is another major difference between settlement and between arbitration prior to settlement and arbitration after the settlement took place. And that would, among other things, be the accessibility of that arbitration to the third untouched layer. That third untouched layer may very well have a voice before but would be without a voice after for good reason. I'm not following the court's question. The direct duty claims were asserted in the case. We did seek to arbitrate them. The direct duty would not the top layer be able to enter into these discussions and say, no, we don't want you to settle at that level because we think that the case can come in either by verdict or by further negotiation without penetrating through our layer. And if you're wrong, we'll have an action against you. Yes, that would be the case. And that's something that obviously doesn't take place afterwards. Unless that layer is penetrated. Well, it does take place afterwards. Unless that layer is penetrated. If there is a direct duty, which U.S. Fire holds there is not, which the court below holds there is not, but if there were a direct duty by the excess carriers against CHIRP, being analogous to a primary carrier, it could assert that after the settlement and say that there was a failure to settle in good faith. That's the claim they're asserting. If there is no such direct duty, they can't assert that claim. That is why they're proceeding by way of equitable subrogation. That's the whole purpose. Once we secured the no direct duty ruling from Judge McDonald, they abandoned the direct duty by filing amended complaints that assert only equitable subrogation, which we believe walks into the question then of the obligation to arbitrate that dispute. They have already litigated in court. We litigated in court over the direct duty claim. But a direct duty claim, I submit, Judge, can be asserted either before by a demand to the carrier to settle or afterwards if the carrier doesn't and the allegation meeting with the pleading standards is you failed to settle in good faith. That is the claim they're making, but they're trying to make it standing in the shoes of payloads. Insurance companies and their insurers make that claim all the time. Yes. So it's not uncommon. Not uncommon. I don't say there's anything wrong with their theory in the sense of a theory. What we're looking for, what's the legal basis on which they can tag? Sure. It's not direct duty, although there's a promissory estoppel count now pending in the trial court that Holm asserted. And if it's equitable subrogation, we think even after the fact, they're obligated by the law of subrogation to arbitrate that. That is if 621 does apply to this particular claim. Yes. It is clearly 621. That is where the case is in the question of interpretation of that language. But I think there is a settlement dispute here, and I do not see language in there that says expressly, as the trial court did, this only deals with a settlement of pending claims. I submit if that's the interpretation, then the hospitals easily can evade arbitration. They simply don't raise the issue until after the settlement is complete and they file a common law claim. Well, if we look at the way this paragraph is written, 621, and we're trying to fit it to, you know, if we were just trying to fit it to your explanation, how do we deal with it? We're trying to interpret this. We say the trustees shall devise a policy to govern the settlement of claims against the hospital for covered losses over the deductible amount. Now, it goes on and sets out the procedure. Where do we have a provision that says that if CHRP fails to reasonably settle the claim, that arbitration is required? It is in the language that your brethren commented on, starting with in the event that any hospital and trustee are unable to concur in the settlement. But we still, how do we ignore the first sentence, though? You know, when you're trying to read a paragraph, that's like a topic paragraph. You know, the topic paragraph says this is what we're going to deal with in 621, and what we're dealing with is the policy to govern the settlement of claims for covered losses. And CHRP does have a policy. Even in the language that you read, though, you read present tense, are unable rather than were unable. I agree. It has that tense. So? It has that tense. But then that reading would confine it only to the settlement prior to consummation, no other possible claim. And that, I think, is an unreasonable interpretation because then the hospitals can avoid arbitration. Well, they wrote it, didn't they? Well, they wrote it collectively. They're all charged with it. But could it have said are or were? Could have. Could have been drafted that way. We're confined, of course, to the words they chose. And it's not to be interpreted against any particular party here. It could be equally interpreted against them or against CHRP. There's no evidence who drafted this agreement. But since it's an agreement of all the hospitals, I think all are equally charged with the language. Well, insurance companies have a wonderful way of writing these policies that keep us all scratching our heads on a conventional basis. It's a wonderful thing. I'm grateful for that, but I find out CHRP is not an insurance company. Well, it is on self-primary retention. It's treated as an insurance company. That is correct. Mr. Saltzbrode. Yes, ma'am. The case says that. Thank you. Thank you very much. Ms. Carney. Thank you, Your Honor. May it please the Court, I will be sharing my time today with Mr. Grasso. So I plan to take about eight to ten minutes for my points. The first one of which is this Court need not address CHRP's interlocutory appeal because CHRP waived arbitration by seeking relief on the merits of this claim in the circuit court. That was participation in a judicial forum and that was conduct inconsistent with any right to arbitrate. It constitutes under Illinois law an abandonment of the right to arbitrate if there was one. As you know, when Royal filed its second amended complaint, which is before the Court today, that is the equitable subrogation count, CHRP filed a motion to dismiss with prejudice under Rule 2. If I can stop you for a moment. Is it clear that we're dealing with the CHRP's right rather than the hospital's right to arbitrate? CHRP is claiming that. Well, CHRP is not the hospital. Correct. CHRP is a collective. Who has the right to arbitrate? CHRP is the one trying to invoke that right here, Your Honor. But is it the right of the hospital to seek arbitration? Or is it the right of CHRP itself to initiate? Well, I would say... I see one of your colleagues is shaking his head, so I'm taking my answer from that, that I'm dead wrong in thinking it's the hospital. Palos has... The record is silent here. In fact, there was one, I believe, misstatement. The record here, as the Circuit Court noted, there is nothing that CHRP put in the record to show that Palos wants to arbitrate this, that Palos was ever consulted about the settlement of the medical malpractice case, or that Palos disagreed. But here we know that for this equitable segregation claim, CHRP wants to force the access insurers to arbitrate before its own trustees, but, in this case, it hedged its bets. It went to court, went to the Circuit Court on this claim by filing a motion to dismiss with prejudice, and it argued that one of its affirmative defenses should be... that the case should be dismissed on an affirmative defense as a matter of law, and then it said in its pleading, but in the alternative, and only if the Circuit Court declines to dismiss the access claims, then we want to arbitrate. And it's our position that trying to hedge the bets in that way, trying to say, we want you to dismiss on the merits, but if you don't, we want to arbitrate before our own trustees, is according to... Did that occur before or after the equitable subrogation claim was raised? We filed a second amendment complaint raising the equitable subrogation claim, and CHRP's response to that was to file this motion to dismiss under 2-619, or, if that is unsuccessful, we want to arbitrate. And our position is that under Belheim v. Sims and Apple Color v. Surface Combustion, that request that the court address the merits of this case was action... Even at the very outset? Because that rule procedurally has been changed, for example, with regard to jurisdiction impersonum, where you can now, without filing a special appearance, preserve your impersonum jurisdiction as an alternate to a motion that would go to the merits. Well, the cases that I cited, Your Honor, I believe are still good law, and the way this was phrased was, please dismiss this with prejudice on the merits or in the alternative if you decline to do so. But they never totally gave up their arbitration argument. In other words, arbitration was in the picture with the first initial complaint, and although it was phrased in the alternative, at least it was still present in the response to the second amendment complaint. It was always present. It was present with regard to the first complaint, but then, of course, this case was on a previous appeal and CHRP lost that argument. Incidentally, was this defense interposed, and if so, when? That there was a waiver. Because you had waived the defense of waiver. No, Your Honor, it is in our pleadings in the circuit court, but the circuit court did not address that issue in her ruling. I would like now to turn to the scope of the arbitration clause. We think that the circuit court, of course, was correct to hold that this particular dispute, that is before the court, is not within the scope of that Section 6.21 of the trust agreement. The dispositive law, I think, here is that the parties to a contract are bound to arbitrate only those issues they have agreed to arbitrate in clear and unequivocal language. In Lehman v. Eugene Matansky, the First District said that arbitration may be compelled only upon crystal clear language. Here, we have Royal and Home asserting a cause of action against CHRP as subbriggees of Palos for breach of duty to act in good faith to settle a lawsuit within primary limits of self-insurance coverage. This is a case about CHRP's malfeasance as a primary insurer. That is different than CHRP and the hospital trying to get her. Is the argument in retrospect the corollary of the argument when it's made prospectively? In other words, what argument do you interpose when you bring an action to compel arbitration? You say that there is a duty under the provision to do it. In retrospect, you say there was a duty and it was breached. Are we dealing with two sides of the same coin? I think we're dealing with apples and oranges. The trust agreement through Section 4.2 only speaks to covered losses, which is essentially here a medical malpractice case. And Section 6.21 says CHRP has a duty to put a procedure in place, we don't even know here whether it was, to arrange for the hospitals and CHRP's trustees to concur on the settlement of a medical malpractice case. We're still focusing on the same hockey puck, or whatever you want to characterize it as. Namely, the settlement. Should it have been? Should it be? But it's still settlement. Well, when you're talking about settlement of a malpractice case, you're talking about what is that case worth, when is it the most opportune time to settle the malpractice case. Here the dispute, and the policy said CHRP and the hospitals were to concur, which to me indicates that they're on equal footing. You're going to discuss this. Now if you can't agree on what the malpractice case is worth, then CHRP's trustees get to decide. So here, CHRP is in a different position. It's not an equal with the hospital deciding how much a malpractice case is. CHRP put itself in the place of a primary insurance company, and it has legal obligations to act in good faith. So the analysis is going to be not just what the claim was worth, did you listen to the trial judge? Did you listen to defense counsel when they were telling you, here's what we think the case is worth, here's a good time to settle. So CHRP's duties in this context are different than just simply trying to persuade Palos to settle. Need not be, however, because those very same events are taking place when you're dealing with the prospect of settling in the future, and you're reviewing those very same events and determining the decision in the past. Do you see any situation where an ex post facto disagreement like this that had been raised by the insurance company earlier could be said to have the inability to concur in the settlement is to the detriment of the participating hospitals? Well, I guess the detriment here is if CHRP has a duty to act in good faith as an insurance company, a primary carrier, I take it that the detriment is just simply that if CHRP committed malfeasance, then it has to pay money and derivatively that will impact the hospital. But how is the inability to agree or to concur in the settlement creating in this context an inability which is to the detriment of the participating hospitals? In this context where we're talking about what duty CHRP has, I don't see it. What about the fact that if it's prospective, then your decision as to the CHRP's decision as to what it wants to do with regard to settlement can very well create a problem for the hospital if the decision is made incorrectly, a problem, however, that could be saved or ameliorated if it's made on the spot. On the other hand, once it happens, it happens. So the detriment to the hospital would have already taken place ex post acto, but it would be preventable if it were prospective only. So I suppose in that sense it interlocks with the language of 621. Well, I think I come back to exactly what the circuit court found is that her words were, that arbitration clause just does not fit the case that we have here. And certainly it's not in the arbitration clause by crystal clear language or otherwise that the determination of what duty CHRP owed wearing the hat of an insurance company falls within the provision that makes that arbitration clause only pertain to covered losses. My problem at this point, counsel, is whether I alert you now that you have already breached the eight minutes or whether I wait until you've done it. I am going to turn, if your honors permit, I would like to turn the podium over to Mr. Grosso. Thank you, your honors. I think I'd like to start the conversation where you were, and that is that section 6.21, when you read it, simply doesn't apply to the case that's before the court. And in several factors, and I think, Judge Gordon, you were on one of the points, is that, first of all, the language here is in the moment. It says before any settlement is approved. It is written for when the settlement is about to happen, and you know factually here the first time CHRP even entertained settlement was in December of 2002, just prior to trial, when it had offered nothing throughout. And, by the way, the record, we have no, nothing in the record, that Palos was ever consulted, that a policy exists, et cetera, et cetera, which was all on CHRP to put before this court. The record before this court is more than sufficient to affirm Judge McDonald's decision. But when you look at what the actual facts are, indeed, there's no evidence that Palos was ever informed, and the moment was already lost, Your Honor, by December of 2002, the first time CHRP even starts to talk about settlement and offers $2 million, the moments, as we allege, go back to 1999 and 2000 when the opportunities were there to settle this case for a lot less. And they themselves, the trustees, exposed Palos to unnecessary exposure and having to dip into their excess policies. But even then, as Your Honor maybe brought up, who's got the right even to invoke this arbitration clause? Palos doesn't. Unless the trustees say that they conclude that there's an inability to the detriment of the hospitals, then the trustees will decide if it's going to be arbitrated. This is such a one-sided, unconscionable provision that Palos had no rights even to arbitrate. But even if it's not unconscionable, your argument is that they had the trigger and they didn't use it. They didn't use it. They didn't call Royal. They didn't call the home. There was other excess layers. They didn't do anything, and there's nothing in this record to show that they did. And now they want to say you're restricted to something they themselves had the right to trigger and never did. And the fact is that Palos has no right, even in standing in Palos's shoes, we have no right to arbitrate. Only the trustees have the right to arbitrate. This is such a one-sided document, as is akin to everything Chirp does, that it doesn't apply here on the facts and shouldn't apply in the law. But they are part of Chirp, and presumably they were agreeing to a trust agreement that not only affected them when Palos was the defendant, but would affect the other member hospitals and Palos's right as a member of Chirp when another hospital was involved. So that plays into the unconscionability of it. It's a shared giving up of rights, is it not, Mr. Grasso? It's shared very unequally. But yes, Your Honor, it is a shared, by the fact that it's a contract. Palos might want to use it against some other hospital as a member of Chirp. And I'm sure that's intended. And I'm not standing here saying determine this case on unconscionability. I'm telling you, as I've argued before, that unconscionability certainly is a peg that you can hang on, but that when you just apply the language of this... But even unconscionability, say, we've been prejudiced by it now. Now, we admit that there are circumstances where we would like to use this against somebody else when we're part of Chirp and we're not the target hospital. But it's unconscionable now, but we were happy to agree to it at the time when we didn't contemplate that we would be the target hospital in a situation that was affected. I don't know if you can read that much into it, Your Honor. I think that all this is is a consent clause, first of all. It doesn't even deal with values. All this is in the vernacular of insurance is a consent clause. And consent clauses in the insurance policies are not about you can consent if it's up to 5, you can consent if it's up to 10. That isn't it. You either consent or you don't consent. We'll determine what it is. And what we're now saying is it's not a consent issue. But see, the problem is with the pronoun, you and we. Because in this example, they're both you sometimes, but in all the other cases, they're part of me. Well, no. You could be placed into a situation in December of 02, will you consent or not consent to settle this case? And then you could go back and say, that number was outrageously large. You mismanaged this case. Your other function and the other hat you wear, Chirp, not only are you a $5 million primary carrier, you are a claims management service. And you mismanaged this case and now have cost us and came to us in December of 02, which, by the way, there's no evidence that that even occurred. But that's the only thing logically that I could have because that's the only first time that Chirp actually even offered any money in this case on the eve of trial. You missed all those opportunities, whether it's the home or whether it's payroll standing there now. You missed all those other opportunities to settle this for a lot less. That's the right. And if this was going to be written broadly, which Chirp could have done or the hospitals could have done to have all disputes arbitrated, this is very, very narrow. This is only when consent is an issue and when we, the trustees, want to invoke it. Then we'll invoke arbitration. Otherwise, you have a right. Nothing else, no other dispute comes under arbitration. And I think that's the sum all of it when you look at this. And there's enough in this record. Clearly, as Judge McDonnell said, it couldn't be clearer that this in that very narrow context doesn't apply. And I think morally, whether or not legally it's unconscionable or not, I think unconscionability is the underlying part that goes along with this clause. Thank you. Thank you. Your Honors, let me make three brief rebuttal points. And who else will be getting rebuttal there? Just you? Just me. On the waiver argument. You know, the test of waiver is whether the party seeking arbitration acts in a way that is inconsistent with the right to arbitrate. And the case law is clear. Counsel just cited one case to you, Feldein v. Sims. In that case, the defendant moved to dismiss under 2615. The motion was denied. He moved to dismiss under 2619. Plaintiff then amended its complaint. Defendants then moved again to dismiss 2615 and 2619. They engaged in document discovery. And only after all its motions were denied did it first raise the issue of its right to arbitrate. And the court found waiver. Here, this is our third motion to compel arbitration in this case. The first was after the original complaint based on equitable subrogation. That became moot because the parties waited for this court's ruling in international insurance. And after this court's ruling, the carriers gave up their equitable subrogation counts and they filed amended complaints raising this direct duty claim. We again moved for arbitration. Trial court agreed, but this court reversed. Our argument had been that 621 was adopted in the excess carrier policies by virtue of poly form language. This court disagreed. So naturally, when we went back down, having lost any claim for arbitration, we litigated the direct duty claims. And once we secured a ruling on that in December 16, 2008, the carriers switched field again and go back to equitable subrogation. And we reassert our right, our claimed right to arbitrate results in the court's ruling below and why I'm standing here before you now. This is a record that is not one of waiver. The argument precisely that we just heard was that the fact that CHRP combined its motion with a request to arbitrate with a request to dismiss effectuates a waiver. There is not a single Illinois case to that effect. I agree with Judge Gordon's comments. If that were the rule, you'd be back to the bad old days in the circuit court of gotcha when you filed a stipulation to extend time and you're deemed to have waived personal jurisdiction. There is no such case. The only case I'm aware of is the federal district court case we cited, Benjamin Coleman v. Praxair, where the defendant moved both to dismiss Title VII claims and asserted arbitration in its answer with respect to Section 1981 claims. The district court held no waiver. I know you're not bound by that, but that's the closest case we had. The other two comments I wanted to make briefly was the argument was made that there's no evidence and that whether they disagreed or what happened in there, there's no evidence of a policy. All that goes to the merits of the underlying claims, not to the right to arbitration. In fact, we will use the fact that payloads did not disagree with our settlement strategy as the primary defense, which is not in the record before you. We have to take the allegations as true. Council suggested that it's only CHRP that has the right to arbitrate here. I think fairly right, 621 gives a trigger to both parties to arbitrate. And if CHRP wrongly makes a decision to allow arbitration, that itself will be an arbitrable claim. Can you explain that? Well, because the dual trigger that you pointed out earlier is in the event of an inability to concur and the trustees conclude the inability is to the detriment, et cetera, I would anticipate that if a hospital doesn't concur in a settlement and the trustees say, no, well, that's too bad, I think the hospital still can arbitrate that that was an unreasonable determination by the trustees in breach of their fiduciary duty to deny the hospital its right to arbitrate. What is the purpose of that second clause and the trustees conclude if it isn't to differentiate between the rights of the two parties that presumably are unable to concur? If it meant to say that if the parties are unable to concur, either side may trigger an arbitration, why doesn't it say so? I think because it's a materiality threshold. I don't think that every disagreement about a settlement invokes an arbitration. And there's some kind of threshold. This kind of case and the dollars that were involved I think clearly was arbitrable. There could be disputes that maybe the trustees can make a bona fide judgment. Look, this isn't worth our time and effort. Like an overhang from a garage? No comment, Your Honor. I enjoyed the argument, but no comment. Last point I want to make is the hockey puck point that Judge Gordon mentioned. Let's look at the hockey puck. This is all about settlement, and I want to quote just one sentence from Holmes' brief on page 7. The issues that Holmes and Royal raise in this litigation concern a litany of CHRP claims administration failures to settle a Donahue claim within CHRP's coverage during the several years that CHRP administered the Donahue case. It's a claim about settlement. It looks like a duck, quacks like a duck. They are making a claim that the settlement was inappropriate, inopportune, and damaged that. And I submit if Palos made that claim, it would have to arbitrate it. Thank you. Thank you all. Very well argued. Thank you. In case you're taken under advisement.